**Orman H. EDWARDS, Jr., Appellant,**

v.

**TENNESSEE BAPTIST CHILDREN'S HOME et al., Appellees.**

Supreme Court of Tennessee.

Nov. 1, 1976.

Samuel L. Swann, Springfield, for appellant.

Frank C. Ingraham, Nashville, Ross H. Hicks, Clarksville, for appellees.

### OPINION

HARBISON, Justice.

This case involves the proper disposition of the undistributed income from a small family trust created by the will of Barney McNichols.

The decedent died testate in Montgomery County, Tennessee, his will being admitted to probate on August 10, 1966. The first item of the will directed payment of debts, funeral and administration expenses. In the second item decedent devised to his wife his fifty-acre farm, together with a life interest in the tools, equipment and livestock thereon. In the third item of the will certain specific bequests were made, and in the fourth item the Executor was directed to convert all of the remainder of the estate into cash. After payment of debts and administration expenses, the residue was directed to be paid to a named trustee,

> ". . . who shall hold and invest the same in an approved manner, as hereinafter provided, and shall pay the income therefrom to my wife, Irene McNichols, for and during her life time, either in quarterly, semi-annual, or annual installments."

Upon the death of his wife, testator provided that the trust should terminate, and specific directions were made for the disposition of the corpus, with the residue thereof being bequeathed to the Tennessee Baptist Children's Home.

Although other issues were involved in the trial court, as to the construction of other parts of the will, on this appeal the entire controversy involved certain undistributed income which had accumulated prior to the death of Mrs. McNichols.

Mrs. McNichols, widow of testator and recipient of the trust income for life, died on April 10, 1974. The sole beneficiary of her will is her son, appellant Orman H. Edwards.

A very brief stipulation of facts appears in the record. Other than this stipulation and such facts as may be gleaned by inference from the exhibits thereto, there was no testimony offered.

It was stipulated that a certain savings account "is the corpus of the trust established by paragraph Fourth of the Barney McNichols' will."

This bank account is evidenced by a ledger sheet of a savings bank in Clarksville, beginning in May 1961 and ending in May 1968. The exact date of death of Mr. McNichols is not shown in the record, but apparently the account had in it about twenty-five thousand dollars when he died. The last entry on the ledger sheet is May 1, 1968, and at that date the account had a balance in it of $26,813.89. What happened to the account thereafter, prior to the death of Mrs. McNichols, and the balance therein at the time of her death are simply not shown in the record. It is stipulated, however, that:

"The only payment made from these funds to date were for payment of debts incidental to the decedent's death. The said account has continued to draw interest."

It was further stipulated:

"Irene McNichols a life beneficiary of said trust paid income taxes for the years 1969, 1970 and 1971 for the interest on this account which she had never withdrawn nor demanded from James C. Cunningham, Trustee."

The Trustee, Mr. Cunningham, died in 1974, shortly after the death of Mrs. McNichols. The parties apparently treat the foregoing stipulation as stating that no income from the trust was ever paid to Mrs. McNichols or drawn from the trust by her. Whether she paid taxes thereon in any of the other years than those listed in the stipulation is not shown.

Exhibited to the stipulation were inheritance and estate tax returns on the estate of Mrs. McNichols, and these showed that she was ninety years of age at the time of her death and that she had assets in the amount of approximately seventy thousand dollars. The record is silent as to her standard of living, expenses, dependents, or as to any other circumstances which might shed light on the present controversy.

This action was instituted by the successor personal representative of Mr. McNichols' estate for construction of portions of

his will and for instructions concerning the undistributed income from the trust estate. On behalf of the residuary beneficiary, the Tennessee Baptist Children's Home, it is insisted that Mrs. McNichols had in effect rejected the bequest to her of the trust income, and that the undistributed income, accumulated prior to her death, should pass to it as the ultimate residuary legatee. On behalf of the sole beneficiary of the estate of the life tenant it is insisted that the undistributed income from the trust belonged to the life tenant, and was her property, passing under her will.

The Chancellor found in favor of the residuary legatee under the will of Mr. McNichols, and, in effect, held that Mrs. McNichols had rejected the trust income by not making demand for payment of the same to her.

The Chancellor recognized case law from Tennessee to the contrary, but apparently relied upon a tax case, *Earle v. Commissioner,* 157 F.2d 501 (6th Cir.1946), in support of his conclusion that the undistributed income remained a part of the trust estate.

We are unable to agree with the conclusions of the Chancellor. In the first place, the *Earle* case held that the undistributed trust income was the property of the life tenant, and was taxable in her estate, and was not a part of the residue of the original testator's estate. The holding in the *Earle* case is consistent with the position of the appellant, that, whether the life tenant demanded or received payment of the trust income or not, it was equitably her property in the hands of the trustee and was therefore taxable to her.

In the case of *Miller v. Miller,* 203 Tenn. 590, 315 S.W.2d 101 (1958), the Court held that the undistributed trust income was the property of the life tenant, whether paid to her or not, under the terms of a will which made no provision for accumulation of income by the trustee. See also *National Geographic Society v. Williams,* 497 S.W.2d 908 (Tenn.App.1972), in which conduct and agreements by the life tenant were held sufficient to estop her from claiming certain undistributed income.

There is simply insufficient evidence in the record before us to justify any conclusion that the life tenant deliberately or knowingly rejected the payment to her of income from the trust. The fact that she included it as taxable income for at least three years is some indication that both she and the trustee treated it as belonging to her, and the mere fact that she let it remain in custody of the family trustee, in our opinion, is not decisive or controlling.

It appears from exhibits to the record that the trustee was also the executor of the estate of testator, and he witnessed the will of Mrs. McNichols. He was given wide discretion regarding investments of the trust funds. Certainly it seems more probable that he was accumulating the interest for Mrs. McNichols' benefit and holding it at her request than that she had rejected it, particularly since she paid taxes on it at least part of the time. The record does not disclose the amounts of interest after 1968 or what other income the life tenant may have had. We are simply unable to find evidence of any donative intent upon her part, to leave the accumulated interest to the charitable remainderman of her husband's will.

The judgment of the Chancellor is reversed, and the cause is remanded to the Chancery Court for further proceedings consistent with this opinion, to the effect that the undistributed income, accumulated prior to the death of the life beneficiary, shall be distributed to the Executor of her estate and treated for all purposes as assets of her estate.

Costs incident to this appeal, together with all costs accrued in the trial court, will be paid out of the estate of the testator, Barney McNichols.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.