T.C. Memo. 1997-362

UNITED STATES TAX COURT

ESTATE OF ANNA SOBERDASH, DECEASED, WILMA PORADA AND
MARY ANN LACEK, CO-EXECUTRICES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23849-95.                          Filed August 6, 1997.

Wilma Porada and Mary Ann Lacek (coexecutrices), for
petitioner.

Jeffrey L. Bassin, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge: Respondent determined a deficiency of
$616,768.49 in petitioner's Federal estate tax. After
concessions, the issues for decision are: (1) Whether the value
of property in which Anna Soberdash (hereinafter decedent) held a

qualified income interest for life and for which a deduction was allowed under section 2056(b)(7)[1] to the estate of Andrew J. Soberdash must be included in decedent's gross estate pursuant to section 2044; (2) whether the gross estate should be increased by $91,010.91 to include cash equivalents which are not reported on petitioner's Federal estate tax return; and (3) whether the gross estate should be increased by $15,927.26 to include income accrued at decedent's death.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Decedent died on March 10, 1992, while domiciled in Fayette County, Pennsylvania. Her estate is being administered in the Court of Common Pleas of Fayette County. The coexecutrices of the estate are Wilma Porada and Mary Ann Lacek. At the time of filing the petition, Wilma Porada resided in Parma, Ohio, and Mary Ann Lacek resided in North Royalton, Ohio.

Decedent's husband, Andrew J. Soberdash (hereinafter Andrew), died on November 27, 1982. At the time of his death, they had been married for 48 years.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Article Five of Andrew's will created a trust referred to as the Marital Trust. Article Five (A)(1) of Andrew's will directed the trustees of the Marital Trust to pay the income of the Marital Trust quarterly to decedent or for her benefit during her lifetime. Article Five (A)(1) also authorized the corporate trustee of the Marital Trust in its discretion to pay to decedent or for her benefit such portions of the principal as it deemed advisable, for any purpose or reason whatsoever. Under Andrew's will, no person had a power to appoint any part of the principal of the Marital Trust to any person other than decedent. Article Five (A)(3) of Andrew's will expressed Andrew's intent that decedent's income interest be a qualified income interest for life within the meaning of section 2056 and authorized his executors in their discretion to elect to qualify the principal of the Marital Trust as qualified terminable interest property (QTIP). Article Five (A)(2) of Andrew's will directed the trustees of the Marital Trust to pay to decedent's personal representative the amount necessary to discharge all death taxes resulting from the inclusion of the principal of the Marital Trust in her estate. On the Form 706 estate tax return filed by Andrew's estate, the executors elected to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7).

The Federal estate tax liability of Andrew's estate was at issue before this Court in docket No. 45668-86. In the decision

in docket No. 45668-86, entered on June 9, 1988, the parties stipulated that $1,507,881.39 of the assets distributable under Article Five of Andrew's will represented QTIP for which a deduction was allowed under section 2056(b)(7).  In docket No. 45668-86, the parties further stipulated that the assets of the Marital Trust which constituted QTIP would be segregated from those assets of the Marital Trust which did not and that the assets which did not constitute QTIP would not be includable in the estate of the surviving spouse.

The $1,507,881.39 which qualified for a QTIP deduction under section 2056(b)(7) represented 75.13637 percent of the principal of the Marital Trust, which had a total value of $2,006,859.56. On or about September 27, 1989, the executors of Andrew's estate, who were also the trustees of the Marital Trust, filed a Petition to Divide Trust with the Fayette County, Pennsylvania Orphan's Court in order to segregate the QTIP portion of the Marital Trust from the remaining assets, to comply with the Tax Court stipulation.  The Petition to Divide Trust was not granted, and the QTIP in the Marital Trust has not been segregated from the remaining assets.

On petitioner's Federal estate tax return, petitioner did not include in the gross estate the value of any QTIP which had been deducted by Andrew's estate under section 2056(b)(7).

The assets of the Marital Trust were held at the Fayette Bank and Trust Co., now known as BT Management Trust Co., which

is the corporate trustee of the Marital Trust. As of March 31, 1992, the property held in the Marital Trust had a current market value of $1,982,120.40, 75.13637 percent of which equals $1,489,293.31. This is the amount of respondent's adjustment for QTIP in the notice of deficiency.

On August 15, 1995, a payment of $441,214.40 was made by the trustees of the Marital Trust to respondent in partial payment of the deficiency at issue in this case.

Prior to her death, decedent was determined to be incompetent, and a guardianship was established, with Integra National Bank (Integra) as the guardian of her assets. Integra prepared an estate valuation schedule listing the assets held by the Anna Soberdash Guardianship and their values as of the date of decedent's death. According to the estate valuation schedule prepared by Integra, decedent owned as of the date of her death two parcels of real estate, 1,026 shares of BT Financial Corp. common stock, and household goods, all of which were reported on the Federal estate tax return. The remaining assets listed on the estate valuation schedule prepared by Integra were cash equivalents. These were not reported separately on decedent's Federal estate tax return. Rather, an aggregated amount of $368,050.76 was reported as "cash".

As of the date of decedent's death, she owned the following cash equivalents listed on the estate valuation schedule prepared by Integra, which had the following values as of that date:

| | |
|---|---|
| 3,539 shares short intermediate govt. | $36,451.70 |
| 12,023 shares income trust | 127,203.34 |
| 18,198 shares intermediate govt. trust | 181,434.04 |
| Federated trust short-term govt. securities | 18,500.00 |
| Accrued net income | 739.83 |
| Principal cash | 66.80 |
| Undistributable income cash on hand | 95,229.85 |
| Subtotal | 459,625.56 |
| Less: Costs | (563.88) |
| Total | $459,061.68 |

During the period from January 1 to March 10, 1992, the Marital Trust established under Andrew's will accrued income of $15,927.26, which was payable to decedent under Article Five (A)(1) of Andrew's will and which was paid to the Anna Soberdash Guardianship on April 29, 1992. The $15,927.26 in income accrued by the Marital Trust was not reported as an asset on petitioner's Federal estate tax return.

OPINION

The primary issue is whether the value of property in which decedent held a qualified income interest for life and for which a deduction was allowed under section 2056(b)(7) to the estate of Andrew J. Soberdash must be included in decedent's gross estate pursuant to section 2044.

Section 2056(a) grants a deduction for the value of any interest in property passing to a surviving spouse which is included in determining the value of the gross estate. Pursuant to section 2056(b)(1), a marital deduction cannot ordinarily be

claimed for property passing to a surviving spouse where the interest of a surviving spouse may eventually terminate or fail. However, section 2056(b)(7) allows a marital deduction for QTIP. QTIP is defined in section 2056(b)(7)(B)(i)(I)-(III) as property which passes from the decedent, in which the surviving spouse has a qualifying income interest for life, and to which an election applies.

Section 2056(b)(7)(B)(ii)(I) and (II) provides that the surviving spouse has a qualifying income interest for life if the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, and no person has a power to appoint any part of the property to any person other than the surviving spouse. Under section 2056(b)(7)(A)(i) and (ii), QTIP is treated for purposes of section 2056(a) as passing to the surviving spouse, and for purposes of section 2056(b)(1)(A) as not passing to any person other than the surviving spouse. Pursuant to section 2056(b)(7)(B)(v), a QTIP election with respect to any property shall be made by the executor on the Federal estate tax return, and once made, is irrevocable.

Section 2044 sets forth the tax treatment of the QTIP in the estate of the surviving spouse. Under section 2044(a), the value of the gross estate includes the value of any property to which this section applies in which the decedent had a qualifying income interest for life. Section 2044(b)(1)(A) applies section

2044(a) to any property if a deduction was allowed with respect to the transfer of such property to the decedent under section 2056(b)(7). See Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 417 (1993), affd. in part on this issue and revd. in part 51 F.3d 597, 599-601 (5th Cir. 1995).

Under Andrew's will, decedent was entitled to all the income from the Marital Trust, payable quarterly, and no person had any power to appoint any part of the principal of the Marital Trust to any other person. Thus, decedent had a qualifying income interest for life under sections 2056(b)(7)(B)(ii)(I) and (II) and 2044(a). Andrew's estate was allowed a deduction under section 2056(b)(7) for $1,507,881.39 of the assets distributed to the Marital Trust under Article Five of Andrew's will. This satisfies section 2044(b)(1)(A). It follows that the value as of decedent's death of the QTIP deducted by Andrew's estate must be included in decedent's gross estate.

Petitioner does not argue that the terms of Andrew's will and the Marital Trust are inconsistent with the foregoing analysis. Rather, petitioner appears to object to inclusion in the gross estate because the Marital Trust was allegedly mismanaged by its trustees.[2] Petitioner contends that as a result of such mismanagement, not all the income was paid to decedent or for her benefit and that principal was appointed

---

[2]Petitioner has not established that such mismanagement occurred.

during decedent's lifetime to others.  Under section 2056(b)(7)(B)(ii)(I) and (II), the relevant questions are whether decedent was entitled to all the income from the property, payable at least annually, and whether any person had a power to appoint any part of the property to any other person.  Under the statutory provisions, the possibility of mismanagement in the operation of the trust has no bearing on the eligibility for a deduction under section 2056(b)(7) or the subsequent inclusion in the surviving spouse's estate under section 2044.

Petitioner further contends that any additional taxes should be paid by the Marital Trust.  The question of ultimate liability for payment of the tax is not relevant to the issue of includability in the gross estate under section 2044.  We note, however, that the Code provides a mechanism for the recovery of any additional liability resulting from inclusion of QTIP under section 2044 by the executor of the estate of the surviving spouse.

Section 2207A(a)(1) provides that if any part of the gross estate is includable by reason of section 2044, the decedent's estate is entitled to recover from the person receiving the property the additional tax resulting from such inclusion.  Moreover, Andrew, in Article Five (A)(2) of his will, directed the trustees of the Marital Trust to pay to decedent's personal representative the amount necessary to discharge all death taxes resulting from the inclusion of the principal of the Marital

Trust in her estate. On August 15, 1995, a payment of $441,214.40 was made by the trustees of the Marital Trust directly to respondent in partial payment of the deficiency at issue in this case. This represents a substantial portion, if not all, of the deficiency plus interest that will be due as a result of the inclusion of Marital Trust assets in the gross estate under section 2044.

A QTIP deduction under section 2056(b)(7) was allowed in Andrew's estate for 75.13637 percent of the value of the assets of the Marital Trust. In Andrew's case, the parties stipulated that the assets of the Marital Trust which constituted QTIP would be segregated from those assets of the Marital Trust which did not and that decedent's estate would not include any Marital Trust property that was not QTIP. No such division has occurred, and the QTIP in the Marital Trust has not been segregated from the remaining assets. Respondent therefore determined that 75.13637 percent of the value of the assets of the Marital Trust as of the time of decedent's death is includable in decedent's gross estate. At the time of decedent's death, the property held in the Marital Trust had a value of $1,982,120.40. Applying 75.13637 percent to the value of the Marital Trust results in a value of $1,489,293.31 for the QTIP for which a deduction was

allowed under section 2056(b)(7) for Andrew's estate.  We hold

that respondent's determination is correct.[3]

The next issue is whether the gross estate should include

$91,010.91 in cash equivalents that was not reported by

petitioner on its Federal estate tax return.  Under section 2033,

the value of the gross estate shall include the value of all

property to the extent of the interest therein of the decedent at

the time of her death.

On its estate tax return, petitioner reported that as of the

date of decedent's death, she held cash of $368,050.76.

According to Integra, the guardian of the Anna Soberdash

Guardianship, the cash equivalents held by the guardianship as of

the date of death had a value of $459,061.68.

In support of its position that the amount of cash

reportable on the Federal estate tax return is $368,050.76,

petitioner presented a copy of a decree from the Court of Common

Pleas of Fayette County, Pennsylvania, Orphan's Court Division,

dated April 16, 1993, showing that the amount of cash available

---

[3]Sec. 22.2056-1(b), Temporary Estate Tax Regs., 47 Fed. Reg. 41736 (Sept. 22, 1982), which was applicable to the QTIP deduction for Andrew's estate, provides that a QTIP election may be made for all or any part of a property that meets the requirements of sec. 2056(b)(7)(B)(i)(I) and (II).  A partial election must relate to a fractional or percentile share of the property so that the elective part will reflect its proportionate share of the increment or decline in the whole of the property for purposes of applying sec. 2044.  Sec. 22.2056-1(b), Temporary Estate Tax Regs., supra.  This temporary regulation was incorporated into the final regulations contained in T.D. 8522, 1994-1 C.B. 236, 239, effective Mar. 1, 1994.

for distribution at that time was $368,050.76. This document does not reflect the amount of cash or the fair market value of cash equivalents as of March 10, 1992, the day of decedent's death. We hold that the gross estate should be increased by $91,010.91 to include cash equivalents not reported by petitioner on its Federal estate tax return.

The final issue is whether the gross estate should include $15,927.26 of accrued income payable to decedent at her death. Section 20.2033-1(b), Estate Tax Regs., explicitly provides that interest and dividends which have accrued as of the date of death constitute a part of the gross estate.

During the period from January 1 to March 10, 1992, the Marital Trust established under Andrew's will accrued income of $15,927.26, which was payable to decedent and which was paid to the Anna Soberdash Guardianship on April 29, 1992.

Petitioner appears to argue that the $15,927.26 should not be included in the gross estate because it was also subject to income taxation. Upon receipt of the $15,927.26, it was properly subject to income taxation as income in respect of a decedent under section 691(a). However, decedent's right to this income at her death is an asset which must be included in the gross estate under section 2033. See Estate of Earle v. Commissioner, 5 T.C. 991 (1945), affd. 157 F.2d 501 (6th Cir. 1946). We hold that the accrued trust income of $15,927.26 should be included in the gross estate.

<u>Decision will be entered under Rule 155</u>.